# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| MANUEL MARTINEZ, | Case No. CV 12-3516 (SH) |
| Plaintiff, | MEMORANDUM DECISION AND ORDER |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying plaintiff's applications for Disability Insurance Benefits and for Supplemental Security Income. Pursuant to 28 U.S.C. § 636(c), the parties have consented that the case may be handled by the undersigned. The action arises under 42 U.S.C. § 405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The plaintiff and the defendant have filed their pleadings (Memorandum in Support of Complaint; Defendant's Brief), and the

defendant has filed the certified transcript of record.  After reviewing the matter, the Court concludes that the decision of the Commissioner should be reversed with respect to plaintiff's second claim of error, and affirmed with respect to plaintiff's first, third and fourth claims of error.

On August 15, 2008, plaintiff Manuel Martinez filed an application for a period of disability or Disability Insurance Benefits, alleging an inability to work since May 9, 2005.  (See Administrative Record ["AR"] 59-60).  On April 9, 2009, plaintiff filed an application for Supplemental Security Income, alleging an inability to work since January 22, 2009.  (See AR 349-56).  On September 15, 2009 (following a hearing on July 23, 2009), an Administrative Law Judge ("ALJ") issued a decision.  The ALJ determined that plaintiff had severe impairments -- bilateral shoulder strain and bilateral shoulder impingement syndrome; bilateral carpal tunnel syndrome, status post right cubital tunnel release, status post bilateral carpal tunnel release; bilateral wrist and right low extreme sensory deficits; chronic lumbar spine sprain/strain; chronic cervical spine sprain/strain; bilateral knee sprain/strain with torn medial menisci bilateral knee sprain/strain; and chronic obstructive pulmonary disease -- but found that plaintiff was not disabled within the meaning of the Social Security Act.  (See AR 16-26).

Following the Appeals Council's denial of plaintiff's request for a review of the hearing decision (see AR 399-401), plaintiff filed an action in this Court.

On September 7, 2010, the Court found that the ALJ's determination of plaintiff's Residual Functioning Capacity ("RFC") was supported by substantial evidence.  However, finding that the ALJ improperly relied on the vocational expert's testimony with respect to the interpretation of "repetitive," the Court reversed and remanded the matter for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).  (See AR 426-32).

On June 7, 2011 (following a supplemental hearing on February 17, 2011 and a subsequent vocational interrogatory), the ALJ determined that plaintiff had the same

severe impairments as before, but found that plaintiff was not disabled within the meaning of the Social Security Act. (See AR 410-23).

Plaintiff makes four challenges to the 2011 Decision. Plaintiff alleges the ALJ erred in: (1) failing to properly reject the opinion of the state agency physician, (2) failing to propound a complete hypothetical question to the vocational expert; (3) failing to properly reject the opinion of the consultative physician ; and (4) failing to properly evaluate plaintiff's subjective complaints of pain.

## DISCUSSION

### ISSUES NOS. 1 AND 3:

Plaintiff asserts that the ALJ failed to properly reject the opinions of Dr. Ahmed, a state agency physician, and Dr. Bader, an examining physician, with respect to plaintiff's capacity to handle. Defendant asserts that the ALJ properly determined plaintiff's Residual Functioning Capacity ("RFC").

An examining physician's opinion is entitled to greater weight than that of a nonexamining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990). The ALJ must provide specific and legitimate reasons supported by substantial evidence in the record when rejecting the controverted opinion of an examining physician. Lester v. Chater, supra; Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).

Seamon Bader, M.D., an orthopaedic surgeon at Millenium Multispeciality Medical Group, examined plaintiff on January 26, 2010. In his report, Dr. Bader stated that plaintiff could do the following: lift and carry 50 pounds occasionally and 25 pounds frequently due to bilateral hand pain and low back pain; stand and walk six hours out of an eight-hour workday due to back pain; postural activities occasionally due to back pain and poor balance; sit six hours out of an eight-hour workday due to back pain; no

3

required use of any assistive device; and manipulative activities occasionally due to bilateral hand pain and numbness. (See AR 676-81).

A. Ahmed, M.D., a state agency physician, performed a Physical Residual Functional Capacity assessment on plaintiff. In a report dated February 8, 2010, Dr. Ahmed stated that plaintiff could do the following: with respect to exertional limitations, lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk about six hours in an eight-hour workday, sit about six hours in an eight-hour workday, push and/or pull unlimited, and climb, stoop, kneel, crouch and crawl occasionally and never balance; with respect to manipulative limitations, reach all directions unlimited; handle (gross manipulation), finger (fine manipulation) and feel limited, bilateral handling occasional and bilateral fingering frequent; no visual limitations; and no environmental limitations. (See AR 704-08).

Based on review of the medical records, the ALJ determined that plaintiff had the following RFC: "exert 20 to 50 pounds of force occasionally and/or 10 to 20 pounds of force frequently and/or greater than negligible up to 10 pounds of force constantly to move objects," with plaintiff being limited to "exert no more than 20 to 30 pounds of force occasionally, and the [plaintiff] can push, pull, lift and reach with a force that does not exceed 30 pounds"; "stand and walk up to 6 hours and sit up to 6 hours in an 8-hour workday with normal breaks"; "perform work that does not require climbing ladders, ropes and scaffolds; has stooping and crouching only up to 25 percent of the workday and has kneeling squatting (i.e., sitting in a crouched position), crawling and climbing ramps and stairs up to 50 percent of the workday"; "perform work that requires reaching, lifting, pushing, pulling or handling objects over shoulder height up to 50 percent of the workday, and does not require forceful gripping or grasping of objects (i.e., a loss of 25 percent of pre-injury gripping/grasping strength . . . )"; "perform work that requires flexion and extension of the right lower extremity and the right and/or left wrists up to 50 percent of the workday"; "perform work that does not require concentrated exposure to

4

extreme heat and extreme vibration, and which does not require any exposure to environmental respiratory irritants and poorly ventilated areas (i.e., asthma precautions)." (AR 413-14).

The ALJ specifically discussed the reports of Dr. Bader and Dr. Ahmed. With respect to Dr. Bader's report, the ALJ noted, "Aside from some decreased sensation noted at the hands and right foot, Dr. Bader's examination was largely unremarkable.". (AR 419). Immediately after describing Dr. Ahmed's report, the ALJ stated: "The undersigned does not give great weight to this non-examining source opinion to the extent that it is inconsistent with the adopted functional restrictions. Greater consideration is given to the extensive examinations and neutral opinions of the AME examiners." (AR 419).

Here, the ALJ provided specific and legitimate reasons for rejecting the opinion of Dr. Ahmed with respect to plaintiff's capacity to handle, and the opinion of Dr. Bader with respect to plaintiff's manipulative activities. As discussed by the ALJ, Dr. Ahmed's opinion (and to the extent that Dr. Bader opined that plaintiff could only use his hands occasionally) were not supported by the reports of earlier medical examiners, which the ALJ had discussed in his September 25, 2009 Decision (see AR 21-23). Indeed, in its September 7, 2010 Memorandum Decision and Order, the Court found that the ALJ's original determination regarding plaintiff's RFC (including that plaintiff could perform work that did not require repeated handling of objects over shoulder height [see AR 20]) -- which is similar to the ALJ's more recent determination about plaintiff's residual functional capacity (i.e., that plaintiff can perform work that requires handling objects over shoulder height up to 50 percent of the workday [see AR 413-14]) -- was supported by substantial evidence. (See AR 427-28).

**ISSUE NO. 4:**

5

Case 2:12-cv-03516-SH   Document 23   Filed 02/22/13   Page 6 of 10   Page ID #:75

Plaintiff asserts that the ALJ rejected plaintiff's subjective testimony about his pain without considering the new evidence submitted. In response, defendant argues that the ALJ properly evaluated plaintiff's credibility after considering the new evidence.

At the supplemental hearing, plaintiff testified that he was taking an inhaler (every two weeks) and Flexeril (for sleeping and pain, which had worked "[u]p until now"), that since the prior hearing he had more difficulty breathing and he suffered more pain in the neck and on the spine below the shoulders, that he sees his primary care doctor when his sister gives him money, and that during the day he sweeps the patio, walks to and from the school with his children, watches television, and reads. (See AR 808-16).

After discussing the medical records submitted since the 2009 Decision (see AR 417-19), the ALJ addressed plaintiff's subjective complaints of pain as follows:

> The Administrative Law Judge incorporates by reference the analysis in the prior hearing decision with regard to the claimant's pain and excess complaints. Although the claimant alleged at the February 2011 supplemental hearing that his pain and pulmonary symptoms are greater since the prior July 2009 hearing, no medical or other evidence was provided, which substantiates his allegations. Medical evidence submitted since the September 2009 Administrative Law Judge decision reflects no specialized mental heath treatment and only isolated treatment visits for physical complaints since the 2009 decision. Although the claimant testified that he saw his primary care physician when he had money, which suggests a lack of treatment due to a lack of money, there is no evidence of significant treatment since the 2009 decision from public community hospitals or clinics, which provide low cost or free medical car to the poor. Further, with such allegedly debilitating symptoms, surely more frequent urgent care or emergency department treatment would be documented in the record since 2009. [¶] Moreover, the claimant testified that he only uses Flexeril and an inhaler for his pain and pulmonary symptoms (hearing testimony). He testified that he only used

the inhaler every two weeks when he had symptoms, which suggests adequate control of pulmonary symptoms.  He also testified that Flexeril helped his sleep and pain until recently (hearing testimony).  His testimony suggests the efficacy of minimal, conservative treatment for his physical complaints, which refutes the presence of debilitating symptoms. [¶] Moreover, as stated, the claimant described significant daily functioning to Dr. Aguilar, who opined that the claimant's daily activities were not limited.  His description of daily functioning to Dr. Aguilar is inconsistent with his allegations of debilitating symptoms.  (AR 419-20).

A claimant initially must produce objective medical evidence establishing a medical impairment reasonably likely to be the cause of the pain.  Smolen v. Chater, 157 F.3d 1273, 1281 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991).  Once a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her pain and symptoms only by articulating clear and convincing reasons for doing so.  Smolen v. Chater, supra; see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).

Here, substantial evidence supported the ALJ's finding about plaintiff's subjective complaints of pain.  As noted by the ALJ, there was no new evidence showing an increase in the severity of plaintiff's condition (see AR 418-19, 641-708; see Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001)["While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."]; Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998), plaintiff's pulmonary symptoms appeared to be under control with the help of minimal medications (see AR 419-20, 809-10; Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir.

1995)(noting that the "unexplained absence of treatment for excessive pain" can serve as a reason for discrediting a claimant's complaint of pain), and plaintiff's testimony about his daily activities was inconsistent with his statements to Dr. Norma Aguilar about his daily activities (see AR 420, 686; Light, supra, 119 F.3d at 792 ["In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect on the symptoms of which he complains."]).

**ISSUE NO. 2:**

Plaintiff asserts that the ALJ posed a hypothetical to the vocational expert that did not properly reflect plaintiff's language skills. Defendant contends that the ALJ's hypothetical to the vocational expert was proper.

In the 2011 Decision, the ALJ found that plaintiff "is illiterate, but is able to communicate in basic English (20 C.F.R. 404.1564 and 416.964)."[1] (AR 420). The ALJ stated, "The Administrative Law Judge incorporates by reference the discussion and analysis reflected in the prior decision related to the claimant's education and English language fluency." As stated in the prior decision at AR 24 and Exhibit 2A/12, the

---

[1] Illiteracy is described as follows:
Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." 20 C.F.R. § 404.1564(b)(1); 20 C.F.R. § 416.964(b)(2).

In the Social Security context, literacy refers to literacy in English. See Silveira v. Apfel, 204 F.3d 1257, 1262 (9th Cir. 2000).

claimant's prior July 23, 2009 hearing testimony clearly establishes basic English fluency. (Id.)[2]

At the supplemental hearing, none of the ALJ's questions to the vocational expert mentioned plaintiff's language skills. (See AR 816-25). In a vocational interrogatory subsequently submitted to the vocational expert, the ALJ asked the vocational expert to assume <u>inter alia</u> that the hypothetical person had "a limited education and limited ability to communicate in English as defined in 20 C.F.R. 404.1564 and 416.964[.]" The vocational expert testified that the hypothetical person could perform the occupations of final inspector (DOT 727.687-054), electronics worker (DOT 726.687-010) and sales attendant (DOT 299.677-010). (See AR 489-92).[3] The ALJ relied on the testimony in finding that there are jobs in the national economy that plaintiff could perform. (See AR 420-22).

Here, the ALJ's hypothetical question to the vocational expert was incomplete in that it did not state that the person was illiterate. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988)("Hypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant . . . ."); Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1279-80 (9th Cir. 1987). Since the hypothetical question did not reflect all of plaintiff's limitations, the vocational expert's testimony regarding jobs that plaintiff could perform lacked evidentiary value and cannot

---

[2] In the 2009 Decision, the ALJ wrote, "The claimant testified he can read some books from work in English, he can write a shopping list in English, he could communicate well with an English-speaking supervisor, and he could understand most of what the undersigned was saying at the hearing. The undersigned finding that the claimant is able to read and write some English and is capable of basic communication in English." (AR 24).

[3] Notably, all three jobs require a language ability of Level 2, which for reading includes a passive vocabulary of 5,000 to 6,000 words and a reading rate of 190-215 words per minute. See DOT 727.687-054, 1991 WL 679672; DOT 726.687-010, 1991 WL 679633; DOT 299.677-010, 1991 WL 672643. There is nothing in the record indicating that plaintiff had such abilities.

support the ALJ's decision.  See Embrey, supra, 849 F.2d at 422-23; Varney v. Secretary of Health and Human Services, 846 F.2d 581, 585 (9th Cir. 1988).

### **ORDER**

For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings in accordance with the decision, pursuant to Sentence 4 of 42 U.S.C. § 405(g).  The hypothetical questions to the vocational expert should reflect plaintiff's literacy limitation.  See Hill v. Astrue, 698 F.3d 1153, 1162 (9th Cir. 2012)("Because the overall record shows these additional assumptions should been incorporated into the ALJ's hypothetical, remand is appropriate.").

DATED:  February 22, 2013

_____
STEPHEN J. HILLMAN
UNITED STATES MAGISTRATE JUDGE